## Commonwealth v. Breslin Const. Co.

Nov. 4, 1942.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellant.

Leslie W. Morris, Marion Rider and Mrs. Ralph Gilbert for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The Commonwealth of Kentucky has appealed from a judgment rendered against it in favor of appellee for the sum of $2,179.19 as balance payment for road surfacing material, asphalt cutback, furnished appellant by appellee pursuant to a series of contracts entered into between appellee and appellant by its Department of Highways. The contracts were entered into in May, 1937, and the material furnished during the summer of that year. It was provided in the contracts, among other things, that shipments were to be made "only when and as directed by District Engineer," and the appellee was to begin the shipments of the material within ten days after written notice by the Department of Highways or its district engineer.

On June 15, 1937, the district engineer, E. L. Lyons, wrote appellee a letter instructing it to ship three cars of asphalt cutback to Irvington, Kentucky, the first car to arrive on June 26, the second one on June 29, and the third one July 1. On June 24, 1937, the district engineer made another order for three more cars to arrive in Irvington on July 6, 8 and 10 respectively, one car to arrive on each date; and on July 3 a similar order was made by the district engineer for three more cars, to arrive on July 12, 13, and 15, one car to arrive on each date; and on July 8 four cars were ordered by the district engineer to arrive on July 19, 20, 21 and 22, one car on each date. Appellee delivered the material to appellant, requested in the letters of the district engineer, but failed to deliver same at times and on the dates designated, many of the cars arriving from two to five days late, and in one instance four cars arrived on the same day.

One of the defenses pleaded by appellant was that appellee breached the contract by failing to deliver to appellant the material at the times designated and as directed by the Department of Highways, and that the material was delivered in such a manner and at such times as to incur a great expense to the Department of High-

ways in the unloading and handling of same. It is further alleged:

> "The defendant states that by reason of the delays and the failure to deliver the materials under the terms of the contract, the defendant, through its Department of Highways, was caused to lose the use of its machinery, pay demurrage to the railroad company in certain amounts and pay employees who were unable to do any other work due to the character of work being done at said time, which work required the materials which were to be furnished by the plaintiff under the contract, as set out in plaintiff's petition."

The answer further sets out various items of expenses and damages alleged to have been sustained by the appellant, consisting of demurrage on the railroad cars, rental of machinery, wages for labor, and various other items amounting to the sum sued for. The answer further set out that after making all proper deductions for reasons set out above there was due appellee the sum of $2,768.38, and:

> "* * * that said sum of $2,768.38, was ordered paid by the Department of Highways on October 13, 1937, and that a notice of the deductions as set out herein was given to the plaintiff on said date and the plaintiff accepted said deductons and agreed that same should be made and that later check was issued, delivered and accepted by the plaintiff for amount due, and said check was cashed, and it was understood by and between the defendant and the plaintiff that said check was a final and complete payment of all claims that plaintiff had against the defendant by reason of said contract and was a compromise, adjustment and settlement of the claim for breach of contract or damages suffered by the defendant by the failure of the plaintiff to comply with the provisions of the contract.

> "The defendant pleads and relies upon the acceptance of payment as settlement, compromise and adjustment of all claims of the plaintiff and defendant as a complete bar to plaintiff's right of action herein."

Appellee admits that it received the check and ac-

cepted, cashed and used the same for which it gave appellant credit, but denies that there was any dispute between the parties as to the amount due and insists that acceptance of said check is not a bar to its right of action to recover the balance of the contract price. It is not denied that if there was a dispute or controversy between the parties as to the amount due, the acceptance of the check for the sum appellant contends it should pay and did pay appellee constituted payment in full of the claim and that appellant's plea of settlement, satisfaction and accord is well taken. This brings us to the question of whether or not the evidence is sufficient to show that there was a dispute between the parties.

As we have noted above, the first shipment of material was ordered to arrive one car each on June 26, 29 and July 1. On July 2 the district engineer wrote appellee this letter:

"I would call your attention to the fact that you are not making delivery of asphalt cutback in accordance with your contract. Your shipments are from one to three days late.

"Unless you make these shipments in accordance with your contract, it will be necessary that I request the Department of Highways to deduct the cost of these delays from your invoice."

Also, on July 6 the district engineer again wrote appellee as follows:

"I have your letter of July 3rd, stating that due to extreme rush your shipments have been a little late. I do not know what you mean by 'a little late.'

"Oil ordered for delivery on July 1st arrived on July 5th, causing us to lose four days. Our payroll expense on our surface treatment runs $86 a day, to say nothing of the rental on equipment, and the fact that we are getting nothing done at this time of the year. I am sure that you have had enough experience in surface treatment work to know what a delay of four days may mean. It is my opinion that the Department of Highways will insist that somebody pay for this additional cost and delay.

"* * * It certainly seems to us that you could give us better cooperation than this."

Also, by letter dated July 13, the district engineer made further complaint to appellee concerning the manner of shipments, which letter in part reads:

"You were given shipping instructions on this order, having the last car to arrive in Irvington on July 10th. To date we have received five cars on this order, which amounts to less than 50,000 gallons. Please advise what you propose to do about the remaining car." Another letter which appears in the record, bearing the same date and concerning the manner of shipments, concludes as follows:

"We assume that you expect to pay the expenses caused by these delays."

On July 20 the district engineer again wrote appellee:

"I have your letter of July 17th, and also telegram advising that four cars were shipped to Ekron on July 16th. I take it that these are the last four cars ordered from you.

"Please advise what has become of the three cars ordered for July 12, 13 and 15. You stated in your letter of July 10th that the first of these cars would be shipped 12th and arrive three days later. We have not received this cutback.

"I would also thank you to advise why you would ship four cars one day, as we cannot possibly handle this material without demurrage.

"I might add that to date we have not received the cutback ordered from you for delivery on July 12th."

The letter and notice of October 13, 1937, referred to in the answer, reads in part:

"Breslin Construction Co.
"Breslin Building
"Louisville, Kentucky
"Subject: Contracts HCT-1891, HCT-1892 and HCT-1893—Meade Co.,

Maintenance

"Gentlemen:

"Authorization for final payment of the above numbered contracts is being forwarded to the De-

partment of Finance, in the amounts of $2,654.27, $758.29 and $2,768.38, respectively.

"For your information, the above figures were arrived at as follows:"

Then follows a detailed itemized statement of the amount of material furnished and the contract price therefor, and all deductions made because of the deliveries not being made according to the contract, as indicated in the previous letters. The letter concludes with this paragraph:

"The deductions for extra expense occasioned by delays in receiving material have been made from these authorizations for final payment upon the recommendation of the District Engineer, which recommendation had been approved by the Chief Engineer.

"Very truly yours,
"Department of Highways
"By: Robert Humphreys
"Commissioner of Highways."

No response was made to the above letter, and on November 20 the Department of Highways mailed appellee a check for the amount set out in the letter and statement, which it cashed and used.

It is to be noticed that the first three cars ordered to arrive on June 26, 29 and July 1, respectively, were not delivered on time and the district engineer immediately wrote appellee calling its attention to the fact that the deliveries were not being made in accordance with the contract and that he would request the Department of Highways to deduct the cost of the delays from the invoice. This letter was followed by numerous others in which the attention of appellee was repeatedly called to the fact that appellant was suffering damages and expenses because of the manner of the deliveries, and many times warned appelee that it woud be required to account for the cost of the delays, all of which occurred previous to the letter and final statement of October 13 which fully set out in detail all deductions made, which were in accordance with the previous letters. According to Webster's Unabridged Dictionary the word dispute means to "oppose," "controvert," "to call in question." It is obvious that appellant was opposing, controverting and calling in question appellee's right to collect the full in-

voice or contract price for the material furnished because of the matters set out in the correspondence, and particularly the letter and final statement of October 13. We think there was a dispute between the parties as to the amount due appellee, and that there was a sound basis for the dispute, since the very nature of the work and contract made it plain that time was of the essence of the contract.

Appellee received and cashed the check with full knowledge of appellant's position or contention with reference to deductions being made from the invoice prices, and if it was unwilling to accept the check as payment in full it then became its duty to return the check or notify appellant of its unwillingness to settle on the basis proposed. The check was burdened with the condition set out in the whole line of correspondence between the parties and very forcibly brought to the attention of appellee in the letter and statement of October 13 and, as this court said in the case of Cunningham v. Standard Construction Company, 134 Ky. 198, 119 S. W. 765, 767:

" 'The plaintiff could only accept the money as it was offered, which was in satisfaction of his demand. He could not accept the benefit and reject the condition; for, if he accepted at all, it was cum onere. * * * The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference from the transaction.' "

We conclude, therefore, that the acceptance of the check by appellee precludes it from recovering any further sum or amount. It follows, therefore, that the court should have sustained appellant's motion for a directed verdict in its favor.

The judgment is reversed and remanded for proceedings consistent with this opinion.